C. L. KRAFT COMPANY v. GRUBBS.

Opinion delivered February 1, 1915.

CORPORATIONS—AUTHORITY OF OFFICER TO EXECUTE NEGOTIABLE PAPER.—In an action on the promissory note of a corporation, executed by its

president, where there was evidence that he applied the proceeds of the note to his own use, and that he had no authority to execute the company's note for his own use, it will be *held* to be prejudicial error to charge the jury that the corporation would be liable if the president executed notes without authority, if the directors knowingly acquiesced in his acts; the instruction, under the facts, being too broad.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellee instituted this suit against the appellant on a promissory note in the sum of two thousand dollars ($2,000).

The appellant denied that it was indebted to the appellee; denied that the note sued on was executed by it. It alleged that the note was drawn by one McCain, without authority, and negotiated and the proceeds used by him without the knowledge of appellant.

The facts are substantially as follows:

The Kraft company was a corporation engaged in the livery business in Little Rock, Arkansas. Ed Woodruff and C. M. McCain purchased the stock of the corporation, and transferred one share of the stock for the purpose of completing the new organization to Roy Campbell, and he held the same merely as trustee. The new corporation went under the same name as the old, that of C. L. Kraft Company. The purchase price was $8,000. Woodruff paid $4,000 of the purchase money in cash. Notes were executed to C. L. Kraft Company, and certificates of stock were pledged by the corporation to the Citizens Bank for money with which to pay the balance. This money, the balance of the purchase money, $4,000, was to be paid in monthly installments of $300 out of the profits of the business, after which the corporation was to pay Woodruff a similar sum each month until the $4,000 he had advanced was returned to him, the same being in effect a loan by him to the corporation.

By a contract between Woodruff and McCain, it was understood that after the $8,000 purchase money was

fully paid in the manner indicated that they were to be equal partners in the business. McCain was the president and treasurer of the corporation, and its active business manager. The directors were Woodruff, McCain and Roy Campbell.

Thus far the facts are undisputed.

McCain testified on behalf of the appellee: "I had absolute control; as president my powers were 'to buy and sell, borrow and sign notes.' The directors knew that the company had no capital to work on, and I had absolute control to execute notes for anything I needed."

Witness here exhibited one of a series of fourteen notes, executed by the Kraft company and signed by the witness. The note was for $93.75, bearing interest at the rate of 10 per cent per annum until paid. Continuing, witness says:

"I, as president of the company, borrowed $2,000 from Mrs. E. G. McCain, my wife, and signed the company's name to the note, with me as president, with the knowledge of Mr. Woodruff."

The note is exhibited, being a promissory note to Mrs. E. G. McCain for $2,000, specifying: "This note is secured by 238 shares of the C. L. Kraft Company's stock and lien on lease on building, with interest at 8 per cent until paid. Signed, C. L. Kraft Company, by C. M. McCain, President."

The witness continued as follows:

"The borrowing of this money was discussed between me and Mr. Woodruff as many as a dozen times. The object of borrowing the money was to pay the debts of the company. I paid Woodruff $1,000 and used $1,000 to pay bills of the company. All of the money was used to pay bills of the company. One thousand dollars was used to pay Mr. Woodruff. It was a company debt, because the company borrowed the money. The company got the benefit of all the proceeds."

The appellee testified that he bought the note from his sister a few days after the date of the note. He paid

face value for it. The note was not due. He sent his sister $2,000 of his own money.

There was testimony on behalf of the appellee tending to show that Woodruff knew that McCain was borrowing the money from his wife. Grubbs testified concerning this that "he wanted the company to borrow and McCain to turn it over to him." "I understood that Woodruff was to get the money. * * * I had some talk with Woodruff. I don't remember exactly what I said to him, but anyway they all gave me this impression, if he (McCain) could get this $2,000, that would enable him to pay off the pressing debts and satisfy Mr. Woodruff."

Woodruff testified on behalf of appellant that he was one of the directors of the Kraft company at the time of the execution of the note; that he did not authorize its execution, and did not know anything about it; that he didn't know anything about any of the notes that McCain executed, never authorized him to execute any notes for the company. He kept the minute books containing the articles of association under which the company was operating at the time. These showed the following as to the duties of the treasurer:

By-Law 7. "It shall be the duty of the treasurer to collect and disburse the funds of the corporation, to draw checks, to endorse or collect all drafts, warrants or checks."

By-law 10 reads as follows:

"Whenever it becomes necessary to borrow money for the use of the corporation, such transaction must be done by the authority and consent of the majority of the board of directors."

The witness, continuing his testimony, stated that "the majority of the directors never did give their consent to the borrowing of this money."

The witness's testimony shows that McCain gave him a check of $1,000, that "was to purchase for McCain, personally, stock of the witness. He gave witness his personal check. He denies having any conversation with Grubbs as to buying the business; states that McCain had

no money when they bought out the corporation; that he had authority to run the business as manager, and, of course, had to buy stuff to run it with. He did not need any money for thirty days, "the business being a remarkably good, profitable business." He denied, in short, that the money that McCain borrowed was used in the business, and for the benefit of the company.

The court, at the instance of the appellee, gave, among others, the following instruction:

1. If you find from the evidence that C. M. McCain, the president and manager of C. L. Kraft Company, had been in the habit of executing notes in the name of the company without express authority from the board of directors, and that the board had knowledge of such custom, then you will find that the company is bound by the note sued on herein the same as if express power to execute it had been conferred, and your verdict will be for the plaintiff.

There was a verdict and judgment in favor of appellee and this appeal has been duly prosecuted.

The above facts are sufficient for the purpose of the opinion.

*Baldy Vinson* and *Mehaffy, Reid & Mehaffy,* for appellant.

1. The officers of a corporation, without express authority of the board of directors, have no authority to bind the corporation. 29 So. 688. A note executed in the name of a corporation by an officer having no authority to execute same is void. 90 Fed. 703. McCain borrowed the money for his individual use and not for the company. Instructions 1 and 4 were erroneous and prejudicial. 20 S. W. 535; 105 N. E. 210; 96 N. W. 576; 14 L. R. A. 356; 86 Fed. 742; 56 N. Y. S. 740; 35 Pac. 376; 28 Atl. 1072; 69 Fed. 131; 49 S. W. 544; 55 *Id.* 944; 67 Ark. 542. The note was *ultra vires* and void. 67 Ark. 542; Kirby's Dig., § 839.

*Marshall & Coffman* and *Covington & Grant,* for appellee.

1.   Third persons and strangers dealing with the president of a corporation, where he has the management and control of the business, are protected.   Holding him out to the public as possessing power to bind the corporation, or a custom to that extent, binds the company.   2 Thomp., Corp. (2 ed.), 515; 105 Ark. 641; 103 *Id.* 283; *Int. Life Ins. Co.* v. *Vaughan,* 41 A. L. R. 26; 81 Ark. 111.

2.   The company is estopped.   86 Ark. 288; 74 *Id.* 190.   Accepting the money was a ratification.   86 Ark. 190.

3.   The verdict is conclusive, and there is no error in the instructions.   73 Ark. 337; 75 *Id.* 111; 67 *Id.* 531; *Quinn* v. *State,* 114 Ark. 201.   The president was authorized to contract debts and execute notes.   105 Ark. 641; *Int. L. Ins. Co.* v. *Vaughan, supra.*   Instructions must be considered as an entirety.   100 Ark. 107; 64 *Id.* 251.   Justice has been done.

WOOD, J., (after stating the facts).   The testimony on behalf of the appellee would have warranted the court in submitting to the jury the issue as to whether or not C. M. McCain, as president and active manager of the appellant, had been in the habit of executing notes in the name of the company in order to carry on the company's business, and for the benefit of the company, without express authority from the board of directors, and also as to whether or not the board of directors had knowledge of such habit or custom on the part of its president, McCain.   In other words, it was an issue for the jury as to whether or not the board of directors, without expressly authorizing him to do so, had permitted McCain to execute notes on behalf of the company to such an extent as to establish a custom by which the corporation was bound. The proof tended to show that McCain, as president and business manager of the corporation, frequently executed notes on behalf of the company in transacting business for the company, and that this was done so often as to warrant a finding that the board of directors permitted,

or at least consented or acquiesced in the exercise of such custom. But there is no evidence that tended to prove a custom on the part of McCain to execute notes in the name of the C. L. Kraft Company for his own benefit. The custom that the testimony tended to prove was a custom of the president, McCain, to execute notes in the company's name in the transaction of the business of the company, the company receiving the benefit of the proceeds of such notes.

The instruction No. 1 was therefore inherently erroneous, for there was a sharp conflict in the evidence as to whether or not the proceeds of the note in controversy were used for the benefit of appellant, or for McCain's individual benefit.

The appellant contends, and testimony in its behalf tends to show, that McCain executed the note in suit in the name of the company for his own private benefit, and that the entire proceeds of the note were used by him for his individual benefit and not for the benefit of the corporation. But, under the above instruction, the jury were authorized to find the appellant liable on the note in suit, even though the proceeds of the note were used for the exclusive individual benefit of McCain. In other words, under the instruction, although the jury might have found that the appellant received no benefit whatever from the note in suit, it was nevertheless liable, if McCain was in the habit of or had established the custom of executing notes in the name and on behalf of the company in the transaction of the company's business, and the proceeds of which the company received.

This instruction was well calculated to confuse and mislead the jury and was highly prejudicial to appellant. The acts of a president of a corporation in the management of the business of the corporation, when within the scope of his authority, are the acts of the corporation itself. And, if the corporation has customarily permitted him to exercise acts within the scope of his employment as general manager of the corporation, it will be liable for

such acts. *Wales-Riggs Plantations* v. *Caston*, 105 Ark. 641.

But here, as before stated, there was no authority by custom or otherwise for McCain to execute notes in the name of the company to be used for his own individual benefit.

The execution of notes, therefore, to be used for his individual benefit, and not for the benefit of the corporation, was beyond the scope of any authority, express, implied or apparent, with which the company had clothed him.

The court erred, therefore, in granting appellee's prayer for instruction No. 1, and also instruction No. 4, which was, in part, based upon it. Otherwise, we find no reversible errors in the rulings of the court.

For the error indicated the judgment is reversed, and the cause remanded for a new trial.